1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7   DONALD FISHER,                        )   1:09-CV-0720 OWW JMD HC
                                          )
8                      Petitioner,        )   FINDINGS AND RECOMMENDATIONS
                                          )   REGARDING PETITION FOR WRIT OF
9      v.                                 )   HABEAS CORPUS
                                          )
10  JAMES HARTLEY,                        )
                                          )   OBJECTIONS DUE WITHIN THIRTY (30)
11                     Respondent.        )   DAYS
                                          )
12

13          Donald Fisher (hereinafter "Petitioner") is a prisoner proceeding pro se with a petition for

14  writ of habeas corpus pursuant to 28 U.S.C. § 2254.

15                          **PROCEDURAL HISTORY**

16          Petitioner is currently in the custody of the California Department of Corrections and

17  Rehabilitation pursuant to a 1977 conviction for first degree murder with a firearm enhancement.

18  The trial court sentenced Petitioner to a prison term of seven years to life.  On June 4, 2008 the

19  California Board of Parole Hearings ("Board") conducted a hearing and denied Petitioner parole.

20  See Board Transcript ("Transcript") at 48-56.[1]  Petitioner filed habeas petitions challenging the

21  Board's denial of parole in all three levels of the California courts.  On November 12, 2008, the Los

22  Angeles County Superior Court denied Petitioner's state habeas petition.  See Respondent's Answer

23  Exhibit 4.  The California Court of Appeal and the California Supreme Court issued summary

24  denials of Petitioner's claim.  On April 23, 2009, Petitioner filed the instant federal petition for writ

25  of habeas corpus challenging the Board's denial of parole.  See Doc. No. 1.  On September 17,

26  2010, Respondent filed a response to the petition.  See Doc. No. 15.  On October 15, 2010, Petitioner

27

28          [1] A transcript of the parole hearing is listed as Respondent's Answer Exhibit 4.

1    filed a traverse.  See Doc. No. 16.

2                              **FACTUAL BACKGROUND**

3         The Board reviewed the following summarized facts:[2]

4         On May 29, 1977, [Petitioner] went to a bar with his girlfriend and some friends.  After
          ordering drinks [Petitioner] went over and visited for a short period of time with [the] victim,
5         Virgil Clay Wheeler, aka "Bud":  apparently [Petitioner] and Wheeler had been arguing for
          the [preceding] four or five months as to who was the toughest.  The conversation between
6         [Petitioner] and Wheeler appeared to be non-argumentative and after 10 minutes [Petitioner]
          got up and left.  Approximately ten minutes later [Petitioner] returned [to the bar with a
7         weapon] and fired two shots into the back of Wheeler's head.  Before leaving, [Petitioner]
          gave the weapon to his girlfriend.  He then left the bar and stated something to the effect of
8         "Now I'm the meanest son of a bitch in North Long Beach."  He was arrested at the home of
          his ex-wife, approximately 30 minutes later.  At the police station [Petitioner's] blood alcohol
9         count was determined to be .20%. [Petitioner] admitted to shooting Wheeler stating, "He
          called me a punk."
10

11   See Psychologist's Evaluation, Respondent's Answer, Exhibit 2 ("Psych Eval"), and the Los Angeles
     County Superior Court's November 12, 2008 decision, Respondent's Answer, Exhibit 3.

12        The Board's Decision

13        The Board determined that Petitioner posed an unreasonable risk to public safety for a

14   number of reasons, including the following:  (1) Petitioner's commitment offense was carried out in

15   an especially cruel manner as the offense was premeditated and deliberate, and the motive for the

16   murder was trivial in relation to the offense; (2) Petitioner's unstable social history evidenced by his

17   past alcoholism and criminal history which included a prior violent offense;  (3) Petitioner's failure

18   to continue substance abuse training; and; (4) Petitioner's unreasonable parole plans.  See Transcript

19   at 48-56.

20                              **DISCUSSION**

21   **I.**    **Jurisdiction**

22        A person in custody pursuant to the judgment of a State court may petition a district court for

23   relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or

24   treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529

25   U.S. 362, 375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by

26   _____

27        [2]These facts are derived from the April 24, 2008 Psychologist's Evaluation prepared for the Board of Parole and
     the November 12, 2008 Los Angeles County Superior Court's decision.  See Respondent's Answer, Exhibit 2 and 3
28   respectively.

1   the United States Constitution.  Petitioner is currently incarcerated at Avenal State Prison, which is

2   located in Kings County.  As Kings County falls within this judicial district, 28 U.S.C. § 84(b), the

3   Court has jurisdiction over Petitioner's application for writ of habeas corpus.  See 28 U.S.C. §

4   2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district

5   court where the petitioner is currently in custody or the district court in which a State court convicted

6   and sentenced Petitioner if the State "contains two or more Federal judicial districts").

7   **II.**     **Standard of Review**

8           On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of

9   1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's

10  enactment.  Lindh v. Murphy, 521 U.S. 320, 326-27 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499

11  (9th Cir. 1997).  The instant petition was filed after the enactment of AEDPA and is consequently

12  governed by its provisions.  See Lockyer v. Andrade, 538 U.S. 63, 70 (2003).  The petition "may be

13  granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to,

14  or involved an unreasonable application of, clearly established Federal law, as determined by the

15  Supreme Court of the United States.'"  Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28

16  U.S.C. § 2254(d)(1)), overruled in part on other grounds, Hayward v. Marshall, 603 F.3d 546, 555

17  (9th Cir. 2010) (en banc); see Lockyer, 538 U.S. at 70-71.

18          Title 28 of the United States Code, section 2254 remains the exclusive vehicle for

19  Petitioner's habeas petition as Petitioner is in the custody of the California Department of

20  Corrections and Rehabilitation pursuant to a state court judgment.  See Sass v. California Board of

21  Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006) overruled in part on other grounds, Hayward,

22  603 F.3d at 555.  As a threshold matter, this Court must "first decide what constitutes 'clearly

23  established Federal law, as determined by the Supreme Court of the United States.'"  Lockyer, 538

24  U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal

25  law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's]

26  decisions as of the time of the relevant state-court decision."  Id. (quoting Williams v. Taylor, 529

27  U.S. 362, 412 (2000)).  "In other words, 'clearly established Federal law' under § 2254(d)(1) is the

28  governing legal principle or principles set forth by the Supreme Court at the time the state court

1  renders its decision." Id.  Finally, this Court must consider whether the state court's decision was

2  "contrary to, or involved an unreasonable application of, clearly established Federal law." Id. at 72

3  (quoting 28 U.S.C. § 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant

4  the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

5  question of law or if the state court decides a case differently than [the] Court has on a set of

6  materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.

7  "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state

8  court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

9  applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.  "[A] federal

10  court may not issue the writ simply because the court concludes in its independent judgment that the

11  relevant state court decision applied clearly established federal law erroneously or incorrectly.

12  Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the

13  "unreasonable application" inquiry should ask whether the State court's application of clearly

14  established federal law was "objectively unreasonable." Id. at 409.

15      Petitioner bears the burden of establishing that the state court's decision is contrary to or

16  involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle,

17  94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,

18  Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

19  decision is objectively unreasonable. Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While

20  only the Supreme Court's precedents are binding on the Arizona court, and only those precedents

21  need be reasonably applied, we may look for guidance to circuit precedents"); Duhaime v.

22  Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999) ("because of the 1996 AEDPA amendments, it can

23  no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit

24  precedent on a federal Constitutional issue.  This does not mean that Ninth Circuit case law is never

25  relevant to a habeas case after AEDPA.  Our cases may be persuasive authority for purposes of

26  determining whether a particular state court decision is an 'unreasonable application' of Supreme

27  Court law, and also may help us determine what law is 'clearly established'").  Furthermore, the

28  AEDPA requires that the Court give considerable deference to state court decisions.  The state

1    court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).  A federal habeas court is

2    bound by a state's interpretation of its own laws.  Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.

3    2002).

4          The initial step in applying AEDPA's standards is to "identify the state court decision that is

5    appropriate for our review."  Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005).  Where more

6    than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last

7    reasoned decision.  Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).  Thus, a federal

8    habeas court looks through ambiguous or unexplained state court decisions to the last reasoned

9    decision to determine whether that decision was contrary to or an unreasonable application of clearly

10   established federal law.  Bailey v. Rae, 339 F.3d 1107, 1112-13 (9th Cir. 2003).  Here, the Los

11   Angeles County Superior Court reached the merits of Petitioner's claims.  As both the California

12   Court of Appeal and the California Supreme Court summarily denied Petitioner's claims, the Court

13   looks through those decisions to the last reasoned decision; namely, that of the Los Angeles County

14   Superior Court.  See Nunnemaker, 501 U.S. at 804.

15   **III.    Review of Petitioner's Claims**

16         Petitioner claims the Board violated his due process rights because the Board relied on

17   immutable "static" factors such as Petitioner's 1977 commitment offense and prior unstable history.

18   Additionally Petitioner contends that: (1) there was no evidence of current dangerousness to the

19   public; (2) the reasons provided by the Board were arbitrary and mere "boilerplate,"; and (3) that the

20   Board acted in "usurpation of [its] authority" and without jurisdiction as Petitioner has served "the

21   longest statutory period of time a 1168 life prisoner may remain under the jurisdiction of the

22   Department of the Board.  (See 15 CCR 2000(b)(63)."[3]

23   _____

24         [3]Though not entirely clear, Petitioner appears to argue that based on his interpretation of state regulations, the Board
     lacked jurisdiction to deny Petitioner's parole.  See Petition at 5.  Petitioner's contentions lacks merit for at least two reasons.

25   First, any argument that the state court has erred in applying state law are not cognizable in this federal habeas corpus
     proceeding.  See Wilson v. Corcoran, --- U.S. ----, 131 S.Ct. 13, 16, --- L.Ed.2d ----, 2010 WL 4394137 (Nov. 8, 2010);

26   Rivera v. Illinois, --- U.S. ----, 129 S.Ct. 1446, 1454, 173 L.Ed.2d 320, 2009 WL 815033 (Mar. 31, 2009) ("[A] mere error
     of state law ... is not a denial of due process").  Second, even assuming the claim is cognizable, Petitioner has not provided

27   any case law in support of his position.  Contrary to Petitioner's assertions, the Board is not required to set fixed release dates
     for all life prisoners.  In re Dannenberg, 34 Cal.4th 1061, 1071, (2005) (noting that while under Penal Code Section 3041,
     subd. (a), those receiving "indeterminate life (i.e., life-maximum) [sentences] should 'normally' receive 'uniform' parole dates

28   for similar crimes," the parole authority maintains the express power and duty in an individual case, to postpone the fixing
     of a firm release date and continue the inmate's indeterminate status within his life-maximum sentence, if it finds

1    **A.    Legal Standard for Denial of Parole**

2         The Court analyzes Petitioner's due process claims in two steps: "the first asks whether there

3    exist[s] a liberty or property interest which has been interfered with by the State; the second

4    examines whether the procedures attendant upon that deprivation were constitutionally sufficient."

5    Sass, 461 F.3d at 1127.  The United States Constitution does not, by itself, create a protected liberty

6    interest in a parole date. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981).  The Ninth Circuit Court of

7    Appeals has recognized that "[i]f there is any right to release on parole, or to release in the absence

8    of some evidence of future dangerousness, it has to arise from substantive state law creating a right

9    to release." Hayward, 603 F.3d at 555.  The Ninth Circuit further recognized that "[t]here is no

10   general federal constitutional 'some evidence' requirement for denial of parole, in the absence of

11   state law creating an enforceable right to parole." Id. at 559.  The Hayward court's finding, that there

12   exists no free standing federal due process right to parole or the federal right to some evidence of

13   current dangerousness, contained the consistent and continual caveat that state law may in fact give

14   rise to federal protection for those rights.  As the Ninth Circuit later reiterated, "state created rights

15   may give rise to liberty interests that may be enforced as a matter of federal law." Pearson v. Muntz,

16   606 F.3d 606, 609 (9th Cir. 2010) (per curiam) (citing Wilkinson v. Austin, 545 U.S. 209, 221

17   (2005)).  The Pearson court found that, "Hayward necessarily held that compliance with state

18   requirement is mandated by federal law, specifically the Due Process Clause" as "[t]he principle that

19   state law gives rise to liberty interests that may be enforced as a matter of federal law is long-

20   established." Id.

21        The next question is whether California's parole scheme gives rise to a liberty interest

22   enforced as a matter of federal law.  The Ninth Circuit has definitively concluded that "California

23   has created a parole system that independently requires the enforcement of certain procedural and

24   substantive rights, including the right to parole absent 'some evidence' of current dangerousness."

25   Id. at 611 (citing Hayward, 603 F.3d at 562); see also Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir.

26   2010) (noting that "California's 'some evidence' requirement is a component of the liberty interest

27

28   _____

circumstances presenting a continuing risk to public safety).

1   created by the parole system of that state").  The inquiry that a federal habeas court must undertake

2   in determining whether the denial of parole comports with the requirement of federal due process is

3   "whether the California judicial decision approving the governor's [or parole board's] decision

4   rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or

5   was 'based on an unreasonable determination of the facts in light of the evidence.'"  Hayward, 603

6   F.3d at 563 (quoting 28 U.S.C. § 2254(d)(1)-(2)) (footnotes omitted).  Thus, the inquiry the Court

7   must now undertake is whether the Los Angeles County Superior Court's decision was an

8   unreasonable application of California's "some evidence" standard.

9           **B.    Superior Court Decision**

10          The Los Angeles County Superior Court concluded that there was "some evidence" pursuant

11  to In re Lawrence, 44 Cal. 4th 1181, 1227 (2008) to support the Board's decision that Petitioner

12  currently poses an unreasonable risk of danger to society if released.  See Respondent's Answer

13  Exhibit 4.  The Superior Court found that the following factors indicated that Petitioner posed an

14  unreasonable risk of danger to society: (1) the "dispassionate and calculated" nature of Petitioner's

15  commitment offense; (2) Petitioner's unstable social history as demonstrated by his several prior

16  convictions and alcoholism; (3) Petitioner's inconsistent efforts in treating his alcohol dependence;

17  and (4) Petitioner's failure to secure reasonable parole plans.  Id.

18          The Superior Court applied the correct standard of review.  The California Supreme Court

19  held in Lawrence that, "[t]he relevant determination for the Board and the Governor is, and always

20  has been, an individualized assessment of the continuing danger and risk to public safety posed by

21  the inmate."  Lawrence, 44 Cal. 4th at 1227 (noting that "mere recitation of the circumstances of the

22  commitment offense, absent articulation of a rational nexus between those facts and current

23  dangerousness, fails to provide the required "modicum of evidence" of unsuitability").  "[A]

24  reviewing court must consider 'whether the identified facts are *probative* to the central issue of

25  *current* dangerousness when considered in light of the full record before the Board or the

26  Governor.'"  Cooke, 606 F.3d at 1214 (emphasis in original) (quoting Lawrence, 44 Cal. 4th at 1221).

27  As the Ninth Circuit observed in Cooke:

28          Under California law, "the paramount consideration for both the Board and the Governor"
            must be "whether the inmate currently poses a threat to public safety and thus may not be

1   released on parole, "[citation], and "the facts relied upon by the Board or the Governor [must]
    support the ultimate decision that the inmate remains a threat to public safety.

2

3   Id. (quoting Lawrence, 44 Cal. 4th at 1210, 1213); see also Cal. Code Regs. tit. 15, § 2402(a) ("[I]f

4   in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if

5   released from prison," the prisoner must be found unsuitable and denied parole).  In the instant case,

6   Petitioner challenges the Board's reliance on the unchanging factors of his commitment offense and

7   unstable social history.[4]  However in considering whether there was  "some evidence" of current

8   dangerousness, the Superior Court noted that the Board did not just rely on Petitioner's commitment

9   offense and prior social history, as the Board also relied on Petitioner's inconsistent substance abuse

10  treatment and failure to secure reasonable parole plans.  The Court's review of the record reveals that

11  the evidence cited by the Superior Court is sufficient to satisfy the "some evidence" standard.

12      Regarding Petitioner's substance abuse treatment, the Superior Court specifically noted that

13  the Board's consideration of Petitioner's  ". . . failure to participate in any self-help programs since

14  his last hearing," ". . . failure to engage in any substance-abuse programs since 2002," and failure to

15  "devise a relapse prevention program" were relevant factors in determining Petitioner's suitability

16  for parole.  See Respondent's Answer Exhibit 4 at 2.  As previously noted however, the mere

17  existence of some evidence of particular unsuitability factors is insufficient to deny a Petitioner

18  parole under California law, as a rational nexus between the unsuitability factors applicable to the

19  prisoner and the ultimate determination of dangerousness must also exist. See Lawrence, 44 Cal.4th

20  at 1227.

21      Here, the Court finds a rational nexus existing between the evidence cited by the Board and

22  Petitioner's risk of danger if released in light of:  (1) Petitioner's admission that he had been drinking

23  heavily at the time of the commitment offense (see Psych Eval at 3); (2) Petitioner's admission that

24  alcohol negatively affected his behavior causing him to became violent after he drank (see Transcript

25  at 48); (3) Petitioner's prior criminal record included alcohol-related offenses (see Transcript at 13-

26  16) (4) the Psychologist Report, prepared for the hearing, which diagnosed Petitioner's dependence

27

28      [4]As noted by the Superior Court's decision Petitioner had suffered several prior convictions prior to completing his
    commitment offense including "one for multiple counts of check forgery, one for felony burglary and one for three counts
    of assault and battery against a former wife and her friends."  See Respondent's Answer Exhibit 4.

1   on alcohol (see Psych Eval at 4); and (5) the fact that Petitioner had not participated in Alcoholics

2   Anonymous ("AA") from 2002 to 2008.[5]  See Transcript at 51.  Despite Petitioner's contention that

3   he has "rehabilitated himself" (See Petition at 8), it is axiomatic that were Petitioner to relapse into

4   his previous pattern of alcohol abuse, the likelihood of his recidivism would be increased.

5   Accordingly, the Superior Court's finding that Petitioner's lapse in treatment and inadequate plans for

6   future treatment were probative of Petitioner's current dangerousness is supported by "some

7   evidence," and there is a rational nexus between the evidence cited and Petitioner's risk of danger if

8   released.

9          The Court need not address the remaining evidence of Petitioner's unsuitability including

10  deficiencies noted in Petitioner's parole plans, as due process is satisfied so long as there is any

11  evidence to support the Board's conclusion.  See Sass, 461 F.3d at 1128 ("relevant question is

12  whether there is any evidence in the record that could support the conclusion reached") (emphasis

13  added); see Biggs v. Terhune, 334 F.3d 910, 916 (9th Cir. 2003) (despite the fact that several of the

14  Board's reasons for denying parole were not supported by the record, some evidence as to one of the

15  Board's reasons was sufficient to preclude habeas relief); see also In re Lawrence, 44 Cal.4th at 1227

16  (holding that the "some evidence" standard, is a "highly deferential" standard satisfied by a

17  "modicum of evidence").  Because the Superior Court's determination that the some evidence

18  standard had been satisfied was entirely reasonable, Petitioner is not entitled to relief under section

19  2254.

20                                              **CONCLUSION**

21          For the reasons set forth above, Petitioner's claim for habeas relief cannot be granted.

22          A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a

23  district court's denial of his petition, and an appeal is only allowed in certain circumstances.  Miller-

24  El v. Cockrell, 537 U.S. 322, 336  (2003).  The controlling statute in determining whether to issue a

25  certificate of appealability is 28 U.S.C. § 2253, which provides that a circuit judge or judge may

26  issue a certificate of appealability where "the applicant has made a substantial showing of the denial

27

28          [5]Petitioner testified that he has been on a waiting list for AA since 2005.  Petitioner did not dispute that he has not
    participated in AA between 2002-2008.

1   of a constitutional right." Where the court denies a habeas petition, the court may only issue a

2   certificate of appealability "if jurists of reason could disagree with the district court's resolution of

3   his constitutional claims or that jurists could conclude the issues presented are adequate to deserve

4   encouragement to proceed further." Miller-El, 537 U.S. at 326; Slack v. McDaniel, 529 U.S. 473,

5   484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate

6   "something more than the absence of frivolity or the existence of mere good faith on his . . . part."

7   Miller-El, 537 U.S. at 338. In the present case, the Court finds that reasonable jurists would not find

8   the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable; thus

9   Petitioner's claim is not deserving of encouragement to proceed further. Consequently, the Court

10  hereby recommends that Petitioner be DENIED a certificate of appealability.

11                                                    **RECOMMENDATION**

12          Accordingly, the Court RECOMMENDS that:

13          (1) The petition for writ of habeas corpus be DENIED WITH PREJUDICE;

14          (2) the Clerk of the Court be DIRECTED to enter judgment for Respondent; and

15          (3) A Certificate of Appealability be DENIED.

16          This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United

17  States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of

18  the Local Rules of Practice for the United States District Court, Eastern District of California.

19  Within thirty (30) days after being served with a copy, any party may file written objections with the

20  court and serve a copy on all parties. Such a document should be captioned "Objections to

21  Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and

22  filed within fourteen (14) court days after service of the objections. The Court will then review the

23  Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(c). The parties are advised that failure

24  to file objections within the specified time may waive the right to appeal the District Court's order.

25  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

26

27  IT IS SO ORDERED.

28  **Dated:    January 5, 2011**                        **/s/ John M. Dixon**
                                                UNITED STATES MAGISTRATE JUDGE